The opinion of the court was delivered by
Spencer, J.
The plaintiff alleges its ownership of a strip of land about two acres wide running from North Line street, Carrollton, to Lake Pontchartrain. It charges that the board of commissioners of the second drainage district (the rights, powers, and obligations whereof *479 have been transferred to the city of New Orleans) did in 1871 “forcibly, wrongfully, and illegally enter upon said land,” and cut and excavate a drainage canal from North Line street to the lake; that it will’cost to refill said canal $75,000; that since the opening of said canal the city has used it for drainage purposes, and that said use is worth $25,000; that the city has no right to use and maintain said canal and to drain into the same, and thus trespass upon petitioner’s property.
The prayer is for an injunction restraining the city from using said canal; for judgment declaring petitioner owner of said lands ; and for judgment for $100,000, as claimed.
The city answered by general denial, and an averment that said canal was dug by authority of law, and with the consent of the plaintiff.
The court below refused the injunction, and rejected plaintiff’s demands.
The questions for our solution are :
1. Did the drainage commission have legal authority to excavate said canal on plaintiff’s land ?
2. If so, was it a condition precedent to the exercise of that right that previous compensation be made ?
8. When the owner of property required for public use permits without resistance or resort to legal remedies its occupancy and,the construction of costly public works thereon can he thereafter demand and require their demolition, and enjoin their use, upon the ground that previous compensation had not been made?
4. What is the nature of plaintiff’s action in this case, and is it barred by prescription ?
The answer to our first question will be found in the fourth section of Act No. 165 of 1858, which reads as follows :
“That the said boards of commissioners are hereby invested with all the rights and powers necessary to thoroughly drain the several drainage districts, as expressed in the first section of this act, and to that end shall have the right at all times of entering on the lands, within the limits of the districts aforesaid, and of placing therein their engines and machinery, and of freely passing over and using the same, and of digging all necessary canals and drains, making all necessary embankments and levees, and of doing all things lawful to be done, which may be useful or necessary in draining, cleaning, and reclaiming the land within said districts.
“Said boards of commissioners are authorized to cut their lands and drains through the streets and squares, and in the event of any street selected for the location of a canal being too narrow for a draining canal and a public highway, the said board of commissioners may cause said street to be widened:
*480 “Provided, however, that any'person or corporation shall have the right, by petition addressed to any court'of competent jurisdiction, to oppose any acts of the boards in the exercise of the powers conferred, by this section on said boards, and it shall be the duty of such court summarily to hear and determine the same, after a full hearing of both parties ; and such court shall limit the action of the boards to the exercise of the powers herein conferred in carrying into effect the provisions of this act, according to its true intent and meaning, and where the same can not be done without injury or loss .to the complainant said court shall award adequate compensation.”
It would seem that language so plain needed no commentary. The proposition, urged by plaintiff’s counsel, that this act only authorized the digging of canals through the public streets and public squares is not worthy of refutation. We hold that the act did authorize the construction of the canal on plaintiff’s lands ; and, moreover, that it pointed out to it in the proviso of the fourth section the remedy, if the contemplated work would result in injury.
2. By the proviso aforesaid the Legislature made ample provision for the protection of property holders, and provided a mode of securing to them compensation for any injury resulting froto the use of their property for the public purposes contemplated. The evidence shows that the plaintiff with full knowledge of the fact that this work was contemplated, for there was much correspondence between it and the board on the subject, took no steps to have its rights ascertained, or its compensation fixed; on the contrary, this immense work was begun in 1869, and continued to completion in 1871, to full knowledge of plaintiff; and not until 1877, about six years after the completion, is this suit brought, for the objects and purposes mentioned in the beginning of this opinion.
The right of demanding previous compensation in cases of this kind is personal and facultative to the owner. If he sees proper to waive his right and forego the remedy given him by law, it is his own affair, and- he has no one to blame but himself. If plaintiff had instituted the proceeding authorized and provided by the fourth section, we think that under the constitution its compensation for injury would have first had to be paid, before proceeding with the work. But not having done so, it must be considered as having waived right to previous compensation. The fact that there were, preceding the commencement of this work, propositions and counter-propositions passed between plaintiff and the board, apparently without resulting in an agreement, does not vary the principle upon which we rest this branch of the ease.
We can not answer our third inquiry better than by quoting the following pertinent and well-considered -authorities :
*481 High on Injunctions, g 397, says : “As in -all cases of the exercise of the strong arm of equity by injunction, the right to the relief may be lost by one’s own negligence and delay in seeking protection. And toliere the owner of land over which a railway has been constructed, has stood quietly by, and neglected to insist upon compensation at the time his land was taken, and has waited until the road teas in full operation before asserting Ids rights, he will not be permitted to restrain its operation.”
And in the case of Goodin vs. Cincinnati, etc., 18 Ohio St., 169, Justice Welch, delivering the opinion of the court, said :
“Where a party stands by, as we must presume the plaintiffs to have done in the present case, and silently sees a public railroad constructed upon his land, it is too late for him, after the road is completed, or large sums have been expended on the faith of his apparent acquiescence, to seek by injunction, or otherwise to deny to the railroad company the right to use the property. Considerations of public policy, as well as recognized principles of justice between parties, require that we should hold in such cases that the property of the owner can not be reclaimed, and that there only remains to him a risrht of compensation. The injunction in the present case might hare been sought at the first known attempt, or eren threat to despoil the land, or to construct the railroad upon its line. The omission to do so is an implied■ assent. The .work being completed, the public, as well as those directly interested in the road, as stockholders and creditors, have a right to insist on the application of the rule.”
Hilliard on Inj unctions contains the same principle. At § 43 he says:
“To entitle the plaintiff to an inj motion, he must not be guilty of any improper delay in applying for relief. And this, although the application be on behalf of tho Attorney General. If a party is guilty of laches, or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief — more especially where a party, being cognizant of his rights, does not take those steps to assert them which are open to him, but lies by, and suffers other parties to incur exp -nses and enter into engagements and contracts of a burdensome character.
“The court looks most minutely to.the time in which (the parties) have permitted the matter to proceed, and will not allow them to obtain an injunction in the absence of tne other party, when they have themselves, for some time, acquiesced. Acquiescence, although not conferring- a right on the opposite party, deprives the complainant of his right to the interference of a court of equity. Unless the applicant has acted promptly, he is held to hare impliedly authorised what he now objects to. Thus, where a party applies to stay operations upon a large *482 and costly work, it should appear that he applied for an injunction as soon as he became apprised of his rights and the extent of the threatened injury.”
Our fourth inquiry is as to the nature and character of the plaintiffs demand, and the prescription applicable to it. It will be seen by our synopsis of the allegations and prayer of plaintiff’s petition, that so far as relates to the money demand, it is in damages for the “ forcible, wrongful, and illegal entry” upon its lands, and cutting a canal thereon in 1871. To this demand defendant pleads the prescription of one and two years, under arts. 3536 and 2630 of O. 0. The last paragraph of .the latter article reads as follows :
“ All claims for land, or damages to the owner, caused by its expropriation for the construction of any public works, shall be barred by two years prescription, which shall commence to run from the date at which the land was actually occupied and used for the construction of the works.”
Plaintiff’s action clearly falls within the scope of this article, and his action is barred. So far as plaintiff seeks to make its action petitory, it is sufficient to say that the act of 1858, under which the canal was dug, does not contemplate vesting in the board of commissioners or city the fee, but only a right of servitude of drain through plaintiff’s lands. The city asserts no right of ownership in the soil, and the. decree herein in no manner affects plaintiff’s ownership thereof.
It is further objected by plaintiff that the. act of 1861, No. 33, (amendatory of the.act 165 of 1858) whereby the limits of the Second Drainage District now extended, to embrace plaintiff’s lands, is unconstitutional as violative of arts. 115 and 116 of the constitution of 1852. We have lately had occasion in the case of Hammond vs. E. Lesseps et al., ante 337, to consider objections of this kind to the constitutionality of laws. Under the rules there stated we are not prepared to say that the act is open to the objections made.
The judgment is affirmed with costs.