Williams, J.
In the former decision of the case, reported in 43 Ohio State 228, it was held, that the petition stated a cause of action entitling the plaintiffs to recover of the defendant, as in a proceeding by it to appropriate the strip of land occupied by its railroad, compensation for the value of the land so occupied, and damages for the increased danger and inconvenience in the use of the plaintiffs’ other lands from which the strip was severed, arising from the construction and operation of the defendant’s road. Upon the trial of the case, subsequently had in the court of common pleas upon the issues joined by the pleadings, it appeared, that The Lake Shore & Michigan Southern Railway Company continued to own and use the west half of the right-of-way originally appropriated, which completely separated the plaintiffs’ riverfront, from their other lands; and, that no privilege of crossing *377 the right-of-way, as a means of access from their river front to their lands on the other side, belonged to the plaintiffs. The court, accordingly, instructed the jury that the plaintiffs were not entitled to recover damages for the alleged injury to their riverfront, and withdrew the evidence relating to such damages from their consideration.
With respect to the damages claimed for the injury to the plaintiffs’ land lying east of the strip occupied by the defendant’s road, and between it and the river road, evidence was given tending to show that The Lake Shore & Michigan Southern Railway Company never abandoned any part of its right-of-way lying east of the defendant’s road-way. Evidence was given by the plaintiffs tending to prove their damages, if such abandonment should be found by the jury. The jury found upon the question for the plaintiffs, and returned in their verdict, separately, the specific amount of damages so sustained. Upon the hearing of the motion for a new trial, the court, being of the opinion, that part of the verdict was not sustained by the evidence, required the plaintiffs to remit the damages so assessed, which was done, and judgment entered for the remainder of the verdict.
All questions have been thus eliminated from the case, except those relating to the plaintiffs’ right to recover the value of the strip of land occupied by defendant’s road. This right, on the trial, was contested upon two grounds. 1. That there had been no abandonment by The Lake Shore & Michigan Southern Railway Company, of that part of its right-of-way; and 2. That plaintiffs were estopped, by their conduct, from claiming such abandonment.
I. In the charge to the jury, after.stating that the right, acquired by the railroad company making the appropriation, was an easement in perpetuity for railroad purposes in the strip of land so appropriated, which, afterwards passed to and became the property of the Lake Shore company, and, that by the contract, referred to in the petition, between the defendant and the Lake Shore company, the latter company transferred to the defendant for railroad purposes, twenty five feet of the appropriated strip, the court said to the jury, *378 that “ the supreme court of this state has decided that by virtue of such transfer, the Lake Shore company abandoned its easement to the said twenty-five feet, and that thereby the said twenty-five feet reverted to, and became the property of the plaintiffs, clear and free from the said easement.” After the jury had retired, they returned into court and requested that a portion of the charge be re-read to them, which was done without objection; and then, in response to an inquiry made by one of the jurors, the court further said to the jury; “ The supreme court decided that the contract made by the Pennsylvania Company and the Lake Shore company worked an abandonment of that twenty-five feet, and that thereby it reverted to the plaintiffs, and they became the absolute owners of the property free from the easement.” The defendant excepted to these portions of the charge, and requested the court to give in charge each of the following instructions, viz.:
1. “ There is nothing contained in the contract between the Lake Shore company and the Pennsylvania Company, of date January 4,1874, whereby the former grants to the latter the said twenty-five feet of land, which in law amounts to an abandonment by the Lake Shore company of its rights in said land. The Lake Shore company had a right to make said contract, and the Pennsylvania Company acquired thereby a right to construct its road as it did upon said twenty-five feet of land, as described in said contract.
2. “If the jury find that The Toledo, Norwalk & Cleveland Railway Company, in constructing its road, built the same substantially in the centre of its one hundred feet of appropriation, then I charge you that this was a user of the entire one hundred feet; and if you further find that said track has ever since remained where originally built, then there never has been any abandonment by said company, and your verdict must be for the defendant.
3. “If the jury find that such use of the east fifty feet for support and protection was necessary, and the grant to the Pennsylvania Company and the construction of its track was in aid of such protection and an additional protection, such grant would not amount to an abandonment.”
*379 The court refused to give either of these instructions, and the defendant excepted.
It is clear, that if the charge given was correct, there was no error in refusing the instructions requested, unless the decision upon the demurrer should be overruled. And, though counsel for the plaintiff in error, question the soundness of that decision, they recognize the well established rule, that when it has been determined by this court that a petition states a cause of action, and the case afterwards comes before the court for the review of alleged errors occurring at the trial, the former decision will be followed, unless it is very clearly erroneous. Their contention is,- that the decision upon the demurrer, has not the effect ascribed to it by the trial court, in the portions of the charge under consideration. And whether it has, or not, is the question now before us.
The fact, upon which the petition bases the alleged abandonment, by the Lake Shore company, of its easement in the strip of land for which the plaintiffs claim compensation, is the contract made between that company and the defendant, by which, the former, undertook to transfer that part of its easement, to the latter, for railroad purposes in perpetuity. The averments of the petition are, that by the agreement between the two companies, The Lake Shore & Michigan Southern Railway Company for the considerations therein named “ abandoned to the defendant, and undertook to permit and license the defendant to use and perpetually occupy for its railroad,” the strip of land in question; and, “ the portion of said lot so abandoned ” is shown by the diagram attached to the contract; and, “ that by the abandonment as aforesaid ” the easement of The Lake Shore & Michigan Southern Railway Company “ ceased and terminated; ” and, “ that portion of said lot so abandoned to and occupied by the defendant is of the value of ten thousand dollars.” No other abandonment than that resulting from the contract, is alleg-ed in the petition; nor, is the abandonment placed upon any other ground. True, the petition avers that the Lake Shore company never had any interest in the land except that acquired by the appropriation, which was but an easement, and that *380 it never used any portion of the strip so acquired, lying east of the centre line thereof. But it is nowhere charged, or claimed in the petition, that the abandonment resulted from such non-user. As we understand the decision upon the demurrer, it was held, that upon the averments of the petition, the plaintiffs might treat that part of the easement which the Lake Shore company transferred to the defendant, as abandoned by the former company, and recover of the defendant as upon an appropriation; and by that decision, fairly construed, in view of the allegations of the petition, it was settled, we think, that the effect of the contract between the Lake Shore company and the defendant, was to work the abandonment of that portion of the right-of-way described in it.
The answer does not controvert the making of the contract between the two companies, as alleged in the petition, but denies that the Lake Shore company intended to or did thereby abandon any of its right-of-way, or that its easement or right-of-way ceased and determined by virtue of the contract. These denials, in the light of the former decision, raised no issue of fact. They are the pleader’s construction of the contract, and his opinion of its legal effect. It is further averred in the answer that the contract was entered into for the common benefit of both companies, and was designed to afford means for the interchange of traffic between the two companies; and it is contended in argument, that the Lake Shore company retained a beneficial use of that part of its right-of-way transferred to the defendant by the contract, resulting from the protection afforded by the defendant’s roadway to the tracks of the Lake Shore company.
The agreement between the two companies is expressed in the written instrument. It is no part of that agreement, that the Lake Shore company shall retain for any purpose, any control of, or interest in, that part of the right-of-way transferred by the agreement to the Pennsylvania company, nor, that the latter shall so construct or maintain its roadway as to protect the tracks of the former. It may incidentally result, that the tracks of the Lake Shore company will re *381 ceive some protection from the grade of the defendant’s road as now constructed, but such incidental protection confers on the former company, no right in, or control over, the latter’s road, or the strip of land transferred to it by the contract. The agreement imposes no obligation upon the Pennsylvania company, to maintain its roadway as now constructed. It may change the grade at pleasure, and any right to use or control any part of the right-of-way occupied by the defendant, which the Lake Shore company may hereafter acquire for the protection of its tracks, must depend upon future conventional arrangement between the two companies. And so, with regard to the interchange of traffic between the two companies, and the use of the tracks of each company for the common benefit of both; for nothing on either subject is found in the written contract. By that contract, the surrender by the Lake Shore company of its dominion over that part of its right-of-way therein described, was complete. The charge of the court, with respect to the effect of the former decision was, we think, free from error.
U. The estoppel pleaded by the defendant, is in substance, that the plaintiffs, being the owners of the premises on which the defendant was constructing its railroad, and knowing that the defendant claimed title under its contract with the Lake Shore company to that portion on which its road was being built, stood by, acquiesced in, and encouraged the defendant, in the construction of the road, and asserted no claim to any part of the right-of-way, until after the road was completed.
Upon the trial of the case, the inquiry in regard to the estoppel was allowed a somewhat more extended range, and evidence was admitted tending to show an estoppel, by declarations and conduct of the plaintiffs which induced the defendant to enter into the contract with the Lake Shore company. The defendant was given the benefit of this evidence, as well as of the evidence tending to prove the estoppel pleaded, as appears from the charge of the court, which, upon this branch of the case was as follows:
*382 “ Where one person, by his acts or declarations made deliberately, and with knowledge, induces another to believe certain facts to exist,, and that other person rightfully acts on the belief so induced, and is misled thereby, the former is estopped to afterwards set up a claim based upon facts inconsistent with the facts so relied upon, to the injury of the person so misled. This definition embraces all the essential elements of an estoppel. It will be your duty to examine the evidence, and ascertain whether all these elements are proved in this case substantially as I have stated them. Inquire first if the plaintiffs said or ■ did anything, and if so, what, to induce the Pennsylvania Company to enter into this contract with the Lake Shore company, which is set out in the petition. Merely standing by with knowledge that the railroad company has entered upon the land and is constructing its railroad thereon, and making no objection, is not of itself sufficient. Such conduct might deprive the owner of his right to reclaim the land or to enjoin the operation of the railroad, or to recover the value of the improvements put upon the land by the railroad company; but something more is necessary to bar his claim to recover compensation for the land taken. Did the plaintiffs know that this contract, or substantially such a contract, was about to be made; and did they, by their conduct or declarations, fairly lead the defendant to understand and believe that by such contract the defendant would get the title to this strip of land free from any claim of the plaintiffs to compensation ? To estop the plaintiffs by their acts or declarations, such acts or declarations must have come to the knowledge of and be relied upon by the defendant. Any statements made by the plaintiffs to the Lake Shore company, of which the defendant had no knowledge, or upon which they did not rely, are not sufficient to create an estoppel. If the plaintiffs knew of this contract, they and the defendant are alike presumed to know what the legal effect of the contract was, viz.: that it would work an abandonment by the Lake Shore company of its easement in this strip Of land, and restore the land to the plaintiffs free Tom the easement. And the conduct of both parties must *383 be considered in tbe light of such a presumption. The defendant, knowing the legal effect of such a contract, would enter into it at its peril, unless it was fairly led to believe by the declarations or the acts of the plaintiffs that it might do so without incurring any liability to them. If the plaintiffs knew that a contract was about to be made between the Lake Shore company and the Pennsylvania company, whereby the former company would cede to the latter company the right to occupy and forever maintain and operate its railroad upon this strip of twenty-five feet, and induced the defendant to believe that they had no claim or would assert no claim by reason of such contract, and in reliance upon this belief the defendant entered into the contract, the plaintiffs then would be estopped from maintaining this action. Or if plaintiffs requested the Lake Shore company to cede to the defendant twenty-five feet of said right-of-way, for the purpose of constructing and permanently operating defendant’s railroad thereon, and the defendant knew of such request, and in reliance thereon entered into the said contract, and the plaintiffs gave no notice to either company that such contract would be treated as an abandonment, then the plaintiffs are es-topped. But if the plaintiffs had no knowledge that a contract was entered into for a permanent occupation by the Pennsylvania company of this twenty-five feet for its railroad, or that such contract was about to be entered ipto, or if the defendant had no knowledge of the alleged acts or declarations of the plaintiffs, or if it had reason to believe that an abandonment would be claimed by the plaintiffs, then the plaintiffs are not estopped.”
The defendant took exceptions to portions of this charge. An extended discussion of the exceptions would not be profitable. We see no error in the charge prejudicial to the defendant. Upon the estoppel pleaded in the answer, it follows the case of Goodin v. The Canal Co., 18 Ohio St. 169, and the definition of an estoppel in pais, contained in the first paragraph above quoted, to which the defendant excepted, is adopted literally from the opinion of the court in the case of Ensel v. Levy, 46 Ohio St. 255. We have been *384 unable to discover that any part of the charge is in conflict with the cases of Smiley v. Wright, 2 Ohio, 506, Resor v. O. & M. R. R. Co., 17 Ohio St. 139, Rosenthal v. Mayhugh, 33 Ohio St. 155, relied on by counsel for the plaintiff in error.
In Smiley v. Wright, a widow who was entitled to dower in land sold at public sale, was present at the sale, and agreed that the land might be sold free of her dower. It was publicly proclaimed in her presence that the land would be sold free of her dower, and it was so sold. It sold for a larger sum on that account than it otherwise would. She afterwards brought suit for dower against the purchaser, and she was held estopped. By her agreement and conduct she induced the purchaser to buy the land, and pay for it more than he would otherwise have done.
In Resor v. The O. M. R. R. Co., “ a vendor put his vendee into possession, and executed and placed in his hands a deed of conveyance for the land sold with - an understanding between them that the deed should not be considered as delivered, or become effectual, until the purchase money should be paid; and the vendee subsequently put the deed upon record, and, without paying the purchase money, mortgaged the land to Iona fide mortgagees for value, and without notice; ” and it was held that the vendor was estopped, as between him and the mortgagees, from denying the delivery of the deed, or asserting any claim to the land. In other words, the vendor clothed the vendee with all the evidences of title, enabled him thus to appear of record as the owner, and the mortgagees acted upon his title thus appearing of record. The vendor’s conduct amounted to a representation to the mortgagees that the vendee was the owner of the land, upon the faith of which, the mortgagees loaned their money. As was said by Welsh, J., in the opinion, the vendor “ by his own acts, in putting. the land and deed of conveyance therefor into the possession of the company, plainly said to the world that the company was the owner of the land, and might safely be dealt with as such. As much so as if he had stood by and told the mortgagees that the vendee was the owner.”
*385 In Rosenthal v. Mayhugh, a woman whose husband had deserted her, and who had not been heard from for seven years, under,the belief that he was dead, joined with the children, to induce a sale of land which belonged to him, in representing that he was dead, and they thereby effected the sale. She also as widow, joined with the children in a conveyance in fee with covenants of warranty, and the contract was fully executed by the purchaser. It was held, that although the husband was still living, she was estopped from treating the contract as a nullity, and, upon the death of her husband, from asserting her right to have dower assigned her.
In each of these cases, all the elements of an estoppel as defined by the court in its charge, were present.
It is, we think, by these, and other adjudications in this state, fully established that in order to estop an owner from asserting title to his property, by his declarations or conduct, it must appear, that he was, at the time, apprised of the true state of his title, that he knew or had reason to believe his declarations or conduct would be acted upon by another, that they were acted upon by such other person in ignorance of the title, and that such person will be injured by allowing the truth of the admission by the declaration or conduct so acted upon by him, to be disproved; and, while an owner, who stands by, and without objection sees a railroad constructed on his land, will, after the road is completed, or large expenditures have been made thereon upon the faith of his apparent acquiescence, be estopped from reclaiming the land, or enjoining its use by the railroad company, he is not thereby estopped from claiming compensation for its value.
The charge of the court is in conformity with these rules. But the several instructions requested by the defendant, on the subject, which were refused, are not. Each lacks some essential ingredient of an estoppel. They are as follows:
“1. If the jury find from the evidence that the plaintiffs were the owners of the land in question at the time of the construction of the defendant’s railroad thereon, and know *386 ing that the same was being built by the defendant upon the belief that it had the title thereto, stood by and made no objection or protest to the defendant against its construction upon their said land, then the plaintiffs are estopped from making their claim in this action, and your verdict must be for the defendant.”
“ 2. If the jury find from the evidence that the plaintiffs induced the Pennsylvania Company to locate its railway upon their property, and knew that the defendant in so constructing its road relied upon its title to said way and its right to so construct its road, then the plaintiffs are estopped from asserting any claim to any portion of said land, and your verdict must be for the defendant.”
“ 3. It was competent for these plaintiffs to waive the right' to insist upon an abandonment, and if the jury find that the plaintiffs requested the Lake Shore company to cede to the defendant twenty-five feet of the said right-of-way for the purpose of erecting and maintaining its track thereon, and made no claim to either company, and gave no notice that such action would be treated as an abandonment, the plaintiffs would now be estopped to claim that such ceding or grant was an abandonment.”
“4. If the plaintiffs knew of their rights, and- knowing-them, permitted the Lake Shore company to grant the right to the defendant herein to build, maintain and Operate its track, on the belief that it had the right so to do, and the plaintiffs saw the defendant spending money in making valuable and permanent improvements thereon without knowledge of plaintiffs’ rights, and the plaintiffs kept silent until after the expenditure and improvements were made, they will be estopped from claiming either compensation or damages, and your verdict must be for the defendant.”
The first instruction is in conflict with Goodin v. Canal Co., supra. The second, omits the essential elements, that the plaintiffs knew of their own title, and' the defendant was ignorant of it. Besides, there was evidence tending to prove that the defendant located and constructed its road on lands belonging to the plaintiffs, other than that for which they *387 were claiming compensation in the action; and the instruction, if given, would have been misleading, for it would have authorized the jury to find the estoppel, if the plaintiffs induced the defendant to locate its road on any of their property. The instruction, if otherwise correct, should have •been limited to the property for which the plaintiffs were seeking compensation. The defect in the third instruction, is, that it is not made necessary to the estoppel, that the request of the plaintiffs should have been acted upon by, or have influenced the conduct of, either company. And the fourth, is not substantially different from the first.
Finding no error in the record,

The judgment is affirmed.