Spear, J.
It appeared by the second amended petition, among other things, that the land taken (three and 56-100 acres), was part of a farm in Huron county, to which plaintiff, April 3, 1880, acquired title, with every claim and right of action of the former owner ; that prior to that date the Wheeling & Lake Erie Railroad Company, without the consent of "the owners, took possession of the strip and constructed its railroad thereon; that June25,1886, the Wheeling & Lake Erie Railway Company, the successor of the said railroad company, without any grant or conveyance from, or agreement with, the plaintiff; without any right or title, legal or equitable thereto, and with only the ver bal consent of plaintiff on condition of compensation never performed, took possession of said strip, and has since used and now uses it as an integral part of its permanent railroad. Plaintiff is entitled to recover for value *137 of land taken and damages to remaining land, four thousand dollars. Payment has been often demanded, but refused. Plaintiff here tenders due conveyance of said right of way to the railway company, and asks that the court take an account and render judgment for the amount due to him, adjudge the same a valid lien and for other relief.
The demurrer which the circuit court held ought to have been sustained was on the sole ground that the action was barred by the six years, statute of - limitations.
The question arising, as stated by the defendant’s counsel, is : “Which section of the statute of limitations governs the suit of a landowner against a railroad company, for compensation for land taken for right of way and for damages to land not taken, the suit being brought in the court of common pleas and tender of a deed for the land taken being made?” And, putting their claim ill brief form, it is “that the company entered with the consent of the plaintiff and that his remedy is a chose in action for money only for the amount of the compensation for land taken and damages to the rest of the land, and that this is barred by the six years statute of limitations on which the demurrer was based; and the circuit court, by its judgment affirmed thi s claim of the bar of the statute.
Plaintiff’s contention is, in substance, that the six years limitation does not apply where there has been no agreement in writing and has been no compensation, whether the entry was by consent of the owner or not, and that the right of the plaintiff to compensation and damages subsists so long as the company has not acquired title to the land, and that this right may be enforced by action in the court of common pleas.
*138 Which is right? Or if neither is, what is the correct rule?
In entering upon the inquiry, let us look at the situation of the parties at the commencement of the suit. In brief, it was this: The company is a railroad corporation authorized by law to make appropriation of private property. By its own action in 1886, and by the action of its predecessor in 1880, it was in possession of three and 56.100 acres of land belonging to the plaintiff without any appropriation proceeding, without any agreement in writing, and without having paid therefor, but with the verbal consent of the owner under a promise of compensation afterward refused and never performed. Over and upon the land taken it had constructed its railroad, and the land had'thus become an integral part of the permanent track of its railroad. Under these circumstances, what remedy, or remedies, after the company had neglected and refused to pay, were open to plaintiff? Might he (1) resort to ejectment? Or, (2) could he compel an appropriation under the statute? Or (3) was he confined to a suit to recover compensation?
As to the right of ejectment we suppose the law is entirely settled. He could not have that remedy. His consent to the entry would estop him. Goodin v. Canal Co., 18 Ohio St., 169 ; Penna. Co. v. Platt, 47 Ohio St., 366. The reason for the rule lies in considerations of public convenience.
Whether or not he could compel an appropriation depends upon the statute. Section 6448 provides: ‘ ‘When a corporation, authorized bylaw to make appropriation of private property, * * * has taken possession of, and is occupying or using the land of any person * * * for any purpose, *139 and the land so occupied or used has not been appropriated and paid for by the corporation, or is not held by any agreement in writing with the owner thereof, * * * such owner or owners, or either of them, may serve notice, in writing, upon the corporation in the manner provided for the service of summons against a corporation, to proceed under this chapter to appropriate the lands, and on failure of such Corporation, for ten days so to proceed, said owner or owners * * * may file a petition in the probate court of the proper county setting forth the fact of such use or occupation by the corporation, that the corporation has no right, legal or equitable thereto, * * that the notice provided in this section has been duly served, that the time of limitation under the notice has elasped, and such other facts, including a pertinent description of the land so used or occupied, as may be proper to a full understanding of the facts.” Then follow other provisions not necessary to be recited.
Section 6449 provides for summons and further proceedings relating to trial, final judgment, and collection of the same, and concludes: “But this section shall not be construed to impair or lessen in any manner the right the owner or owners * * * may have to proceed against the corporation as in all other cases of the unlawful entry upon lands. ”
No reported case by this court, so far as we are aware, has undertaken to give construction to this statute as to the precise question now being considered, and hence we are at liberty to construe the statute so as to most effectually carry out the purpose of the legislature in its enactment. And, in giving construction, the court will keep dis *140 tinctly in' mind that the legislature was providing ■a remedy for the private citizen who is in the right as against a corporation which is in the wrong. The latter, either by its strong hand, forcibly, or by making a verbal promise which it has not kepi, has acquired possession of the real property of the former and is using’ it under its extraordinary power of eminent domain, for its corporate purposes. In such condition there surely would be no occasion for giving to the statute an illiberal construction, especially when its object is to preserve the spirit of that clause of the bill of rights which guarantees the inviolability of private property and declares that where taken for public use in time of peace a compensation shall first be made in money. At least we should give full effect to the operative words of the statute. What are they ? Why, that all owners whose lands have been taken by such a corporation and have not been appropriated and paid for, or are not held by any agreement in writing with the owner, shall have the benefit of this statute. That is, owners whose lands have been appropriated and paid for, or are held .by an agreement in writing, may not have resort to this statute ; all other owners whose lands have been so taken may have. No exclusion of an owner who has consented verbally to the taking, or made a verbal agreement in relation thereto, is here expressed. If an agreement in writing has been executed by which the land is held, that is the measure of the owner’s rights, and such owner cannot have the benefit of the statute. Verbal agreements are not recognized as binding, for the same reason, doubtless, that induced the enactment of our statute of frauds with respect to verbal contracts for land, viz.: to *141 prevent frauds and perjuries. The natural effect of the words used is, that if the owner has a contract in writing- on which he may rely, that must be his sole reliance, but he is not to be compelled to rely on the uncertain security afforded by the word of a right-of-way agent, or other agent of the corporation. It seems to us reasonably clear that unless the natural meaning of the descriptive words: “The land so occupied or used has not been appropriated and paid for by the corporation, or is not held by any agreement in writing with the owner thereof,” is restrained by what follows in that or the succeeding section, an owner who has not been paid for his land, and has made no written agreement for its possession and use by the company, may have the benefit of this statute, although he verbally consented to the possession by the company.
It is insisted, however, that the possession by consent gives to the company an equitable right to the land. If this be so it would follow that the fact of consent would render it impossible for the owner to truthfully make the allegation required by the statute that the corporation has no right, legal or equitable, to the land. We would not be ready to concede, even as a general proposition, that a verbal agreement by one in possession to pay for land wholly repudiated, gives to the repudiator an equitable right as against the owner. Were the controversy an action of ejectment between private parties, not involving any question of the public convenience, and the defendant set up that his possession was that of a purchaser, we would suppose that, in the absence of allegations that the purchase money had been paid or was- not due, he must aver that he was ready to pay, and *142 tender pajnnent; that if the pleading lacked that element it would be fatally defective, and it is difficult to see how it could stand' in the way of a judgment for plaintiff on the pleadings. And why? Simply because the answer showed no equitable right in the land. But even if this were otherwise, we would still have to inquire what significance is to be attached to those words used in the connection in which we find them here, and whether, within the meaning of this statute, such facts would establish an equitable right ?
We suppose the rule to be well settled that the legislature is presumed to be consistent with itself; and if in one place it has exp’ressecj^its intent distinctly it will be understood not to have changed it unless that intent clearly appears. The language of every enactment, therefore, will be construed, so far as possible, as to be consistent with every other which it does not in express terms modify or repeal, and the same rule applies as to the several parts of the same act. The revocation or alteration of a purpose clearly expressed will not obtain if all the words of the act may have their proper operation without it. So, too, an incidental purpose will not, ordinarily be permitted to override the main purpose of the act. In this statute the ground of the action, and the conditions on which it may be brought, are given by the words: “the land so occupied has not been appropriated and paid for by^ the corporation, or is not held by any agreement in writing with the owner. ” That which follows is but matter of detail; it is a direction as to the form of the petition. It is a permission, also, that whenever the condition described has arisen the pleader may allege that the company has no right, legal or equitable, and war *143 rants the inference that within the purview of the act the allegation would be true. To hold that a railroad company which has acquired the verbal consent of the owner to its possession, by a verbal agreement to pay which it has wholly repudiated, is possessed of ■ an equitable right to the land which interferes with the enforcement of this statute, would, it seems to us, work an unwarranted modification of the ground of action itself. Such holding would restrain the operative words, and, in effect, incorporate a qualification which would impair the beneficial purposes of the enactment. It would give to that which is but an incident the effect of abridging the principal purpose.' Whatever else may have been intended by the words “right, legal or equitable,” it is not reasonable to assume that the legislature intended by their use in this connection, to impair the force of the operative language used by adding a condition, which would exclude a class of owners from the benefits of the statute, who, by any natural and ordinary construction of language, are included.
But it is further insisted that the entry of the company in this case could not have been unlawful because it was by consent. Hence, it is to be inferred from the saving clause of section 6449, preserving unimpaired to owners the right “to proceed against the corporation as in all other eases of the unlawful entry upon lands,” that the statute, covering as its terms express, unlawful entries only, cannot be held to cover this case. We think the inference does not follow. The effect of this clause is to enlarge the 'remedy, rather than to curtail it, and it would be a queer use of logic to presume that an intention to enlarge *144 shows, also,' with respect to the same subject matter, an intention to limit. On the contrary the clause suggests that every possession save those enumerated, is unlawful. That is, every entry is unlawful within the scope of this statute which has not been preceded or accompanied either by an agreement in writing with the owner or by appropriation and payment. And it would follow that, where there has been an unlawful entry, the owner may resort to any remedy that is appropriate. As, for instance, if the entry was without his knowledge or against his protest, he may have ejectment, or compel appropriation, or have an action for compensation, as best suits him. Or, if he had knowledge and consented to the entry, he may not resort to ejectment, but may either demand an appropriation, or affirm the appropriation in fact made by the company, and, tendering- conveyance, recover compensation.
If the conclusions hereinbefore stated are correct the plaintiff had an election to proceed under the statute and compel an appropriation, or accepting the acts of the company as an appropriation, sue for compensation. If -he resorted to the former remedy the inquiry .might include as well damages to remaining lands as compensation for lands taken, and would be conducted in the probate court, inasmuch as that court alone (save under exceptional conditions1 named in the statute), has jurisdiction in appropriation proceedings. If, however, he preferred, the latter remedy his action might be instituted, as it was, in the common pleas. But the remedy in the latter court could go no further than compensation for land actually taken. To broaden the inquiry in such case into an assessment of damages to other lands *145 would, practically, make an appropriation case of it, and we think it clear that the statute implies that jurisdiction to entertain such inquiry shall (save in the excepted instances) be confined to the probate court.
As to the proposition that the claim of the plaintiff is at best a chose in action for money only, which would be barred in six years, it is sufficient to say that it has been held by this court in Railroad Co. v. O'Harra, 48 Ohio St., 343, that the remedy of the statute is a substitute for an action to recover the possession; and in Railroad Co. v. Perkins, 49 Ohio St., 326, that the language of the act imports, “that the land remains the property of the owner until it has been condemned and paid for,” “which could not be if the wrongful entry of the company worked an appropriation in law, and converted the claim of the owner for land into one for money only;” which decision also follows the O’Harra case in holding that the right is not barred in less than twenty-one years. So that if plaintiff elected to proceed under the statute he might commence the action within the time above named, and, if his action were for compensation alone, defendant concedes that he would have six years in which to bring- it.
Having a choice of remedies the plaintiff would not be held to have elected until some steps were taken looking to an enforcement of the particular remedy chosen. The defendant’s argument upon the statute of limitation seems to proceed upon the theory that the plaintiff’s consent to the entry by the company was, of itself, an election to proceed for compensation only. We cannot so regard it. It is mere assumption at best, unreasonable and illiberal.- We should not presume, in the *146 absence of proof tending to establish it, that a party has selected his least valuable alternative. But, aside from this, the assumption is utterly inconsistent with the conclusion already announced that the. plaintiff had a choice of remedies, since it makes the very act which clothes him with a right to a choice of two remedies, determine conclusively that he has but one. It is not important to consider here what would amount to an election though we would suppose that it should be some unequivocal act not consistent with any other conclusion. Therefore, if the six years, limitation applies to the remedy of compensation (and we do not find it necessary to determine whether it does or not), a demurrer setting up that statute would not be well taken unless it appeared by the pleading that six years had elapsed after election made and before suit. And, applying that conclusion to the plaintiff’s second amended petition, it does not appear to be open to that objection. Hence, the demurrer to that pleading was properly overruled.
These conclusions are consistent with Railroad Co. v. Hambleton, 40 Ohio St., 497; Nail Co. v. Furnace Co., 46 Ohio St., 544; Penn. Co. v. Platt supra; Railroad Co. v. O'Harra, supra; Longworth v. Cincinnati, 48 Ohio St., 637; Railroad Co. v. Perkins, supra; and Daily v.The State, 51 Ohio St., 348.
Attention is called by counsel to Hatry v. Railway Co., 1 O. C. C., 426, and it is insisted that the question here is ruled by the decision of the circuit court in that case, and directly by paragraphs six, seven and eight of the syllabus of the reported opinion, and that inasmuch as the judgment was affirmed by this court, these paragraphs declare *147 the law of the present ease. Possibly the conclusion of counsel is a natural one, although, in view of the comment upon the Hatry case in the opinion in Railroad Co. v. Perkins, supra, we do not see how it can be; but it is, nevertheless, a mistaken one. The fact, however, that such an impression obtained and has been relied upon by counsel in this and in some other cases, makes it proper to add here some further explanation. The case, in this court, was entitled Hill, Trustee, v. Hatry et al., and was disposed of April 15, 1890 (23 W. L. R, 281), by an announcement containing the following: ‘‘Judgment on petition and cross petition affirmed on the opinion of the circuit court reported in 1 Circuit Court Rep., 426, and authority of Compton v. Railroad Co., 45 Ohio St., 592.” The points made in this court by the petition in error and cross petition in error (the pleadings referred to in the above announcement), did not involve any question affecting the right-of-way claimants in the court below, nor were any of them parties in the case in this court. Hence, this court was not asked to pass upon any question, leg'al or otherwise, involved in that branch of the case below, and did not. attempt to do so. The announcement conveyed to counsel engaged in the case, and others familiar with it, the grounds of the- decision here, although an examination of the record on which the judgment of affirmance was based, might be necessary to a full understanding by others. But there is no ground whatever for the belief that the paragraphs of the syllabus referred to were affirmed by this court.
In the case at bar the circuit court declined to pass upon alleged errors other than that affecting *148 the demurrer to the second amended petition. The judgment of that court will be reversed, and the cause remanded with directions to pass upon the remaining allegations of error, and for further proceedings according to law.

■Judgment reversed.